**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **SAM ALAM,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. H-02-4478** |
| | § | |
| **FANNIE MAE and SWIFT GORE** | § | |
| **REALTY, INC.** | § | |
| | § | |
| **Defendants.** | § | |

## MEMORANDUM & ORDER

Pending before the Court are Defendant Federal National Mortgage Association's ("Fannie Mae" or "FNMA") Motion for Summary Judgment (Docket # 29) and Fannie Mae's Rule 12(b)(6) Motion to Dismiss Punitive Damages Claim (Docket # 28). Also pending before the Court are Plaintiff Sam Alam's ("Alam") Motion to Remand (Dkt. #36) and Motion for Continuance (Dkt. #36). After considering the motions, the record, and the applicable law, the Court disposes of the motions as discussed below.

### Factual and Procedural Background

In the summer of 2002, Fannie Mae began marketing a residential foreclosure property located at 9102 Lugary, Houston, Texas, 77074. Some time in June of 2002, Alam met with Defendant Swift Gore Realty, Inc ("Swift Gore").[1] Swift Gore, already managing the property for Fannie Mae, agreed to serve as an intermediary with respect to Alam's purchase of the property. Around June 30, 2002, Alam executed an Earnest Money Contract ("contract") to purchase said property for $76,000. Fannie Mae responded to this offer on July 5, 2002 by

---

[1] Defendants Fannie Mae and Swift Gore may hereinafter be referred to collectively as "Defendants."

having a representative execute the contract, but stamped it with the notation "See Attached Counteroffer/Addendum," and returned it to Alam. Attached to the contract was a document entitled "Real Estate Purchase Addendum," ("Addendum") signed by Fannie Mae and Swift Gore, and intended to be executed by Alam. Along with the Addendum, Swift Gore provided Alam with notes purporting to demonstrate how the Addendum differed from the previously executed initial contract. Alam alleges that he was also told that the Addendum did not change any of the terms of the initial contract he signed. He suggests that Swift Gore told him that the Addendum was substantially similar, if not identical, to the initial contract. Alam also argues that Swift Gore never informed him of the Addendum's casualty loss provisions, damage limitation provisions, or cancellation provisions.

On July 15, 2002, apparently after the contract was executed, but before the Addendum was signed, a casualty loss was incurred when a large tree fell on the roof of the property as a result of a severe storm. Alam alleges that, upon inquiry, he was lied to by both Defendants who fraudulently told him that the property had no insurance, and thus that no proceeds were available for the damage caused by the storm. Based on this representation, Alam decided not to close on the property under the initial contract for $76,000, allowing the contract to lapse.

Fannie Mae and Alam then entered negotiations directly, without the assistance of Swift Gore, for the sale of the property at a reduced rate. The Defendants offered to sell for $56,000. Alam accepted this second offer, but, at least initially, insisted on taking title in the name of an investment corporation named "Doctors Corporation of America." In response Fannie Mae refused to proceed with the contract, claiming it had a right to terminate the contract under the Addendum.

Alam then filed suit against Fannie Mae in state court on October 15, 2002. Alleging

jurisdiction under 12 U.S.C. § 632, 28 U.S.C. § 1441, and 12 U.S.C. § 1723a, Fannie Mae removed the case to this Court on November 22, 2002. Swift Gore was joined by Alam on June 18, 2003. After the close of discovery, Fannie Mae filed a motion for summary judgment on each of Alam's claims.

## Summary Judgment Standard

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Christopher Village, LP v. Retsinas*, 190 F.3d 310, 314 (5th Cir. 1999). The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment, there must be an absence of any genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). An issue is "material" if its resolution could affect the outcome of the action. *Daniels v. City of Arlington, Tex.*, 246 F.3d 500, 502 (5th Cir. 2001), *cert. denied*, 122 S. Ct. 347 (2001).

The moving party bears the initial burden of informing the court of all evidence demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Only when the moving party has discharged this initial burden does the burden shift to the non-moving party to demonstrate that there is a genuine issue of material fact. *Id*. at 322. If the moving party fails to meet this burden, then they are not entitled to summary judgment and no defense to the motion is required. *Id.*

"For any matter on which the non-movant would bear the burden of proof at trial . . . , the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact

warranting trial." *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718-19 (5th Cir. 1995); *see also Celotex*, 477 U.S. at 323-25. To prevent summary judgment, the non-movant must "respond by setting forth specific facts" that indicate a genuine issue of material fact. *Rushing v. Kansas City S. Ry. Co.*, 185 F.3d 496, 505 (5th Cir. 1999).

When considering a motion for summary judgment, the court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in favor of the non-movant. *See Yaquinto v. Segerstrom* (*In re Segerstrom*), 247 F.3d 218, 223 (5th Cir. 2001); *see also Samuel v. Holmes*, 138 F.3d 173, 176 (5th Cir. 1998). The court must review all of the evidence in the record, but make no credibility determinations or weigh any evidence, disregard all evidence favorable to the moving party that the jury is not required to believe, and give credence to the evidence favoring the nonmoving party as well as to the evidence supporting the moving party that is uncontradicted and unimpeached. *Willis v. Moore Indep. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir. 2000). However, the non-movant cannot avoid summary judgment simply by presenting "conclusory allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation." *See TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *see also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

### Discussion

Alam filed the instant lawsuit, claiming, *inter alia,* damages, exemplary damages, and specific performance. His claims are based on the following theories: (1) Fraud; (2) Fraudulent Inducement, Misrepresentation, and Negligent Misrepresentation; (3) Breach of Contract, (4) Negligence; and (5) Conspiracy. The court will examine the first two claims together, and the latter three claims separately.

# I.        Fraud, Misrepresentation, Negligent Misrepresentation, and Fraudulent Inducement

Alam asserts that Fannie Mae committed fraud, misrepresentation, and negligent misrepresentation when it gave him misinformation regarding the existence of casualty loss insurance coverage on the property. In support of its motion for summary judgment, Fannie Mae argues that the relationship between the parties is controlled by the Addendum which supplanted and replaced the terms of the initial contract. Specifically, it argues that the Addendum disposes of Alam's fraud and misrepresentation and negligent misrepresentation claims.

In his response to Federal National Mortgage Association's Motion for Summary Judgment (Docket # 33), Alam argues that he was fraudulently induced into executing the Addendum, that the Addendum should not be enforced against him, and that this creates an issue of material fact which precludes a dismissal on summary judgment. He alleges that Fannie Mae employees represented to him that the Addendum was merely a form of the earnest money contract used by Fannie Mae which did not vary the terms of the initial contract. He also argues that when the Addendum was delivered to him, it contained various post-it notes instructing him where to sign and also purporting to explain certain portions of the agreement. Alam asserts that the cover page of the Addendum and the document itself failed to indicate that it was in fact a counteroffer or an amendment to the initial contract. It was merely identified as an Addendum. As a result of these misrepresentations, he argues that he should not be held to the terms of the Addendum.

Under the common law, to establish a claim for fraudulent inducement, a plaintiff must prove the elements of a simple fraud claim. *Balogh v. Ramos*, 978 S.W.2d 696, 701 (Tex. App. –Corpus Christi 1998, pet. denied) (op. on reh'g), cert. denied, 528 U.S. 822, 120 S. Ct. 66, 145

L.Ed.2d 57 (1999) (citing *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 688 (Tex. 1990) (op. on reh'g)).  Those elements are (1) a material misrepresentation; (2) which was false; (3) which was known to be false when made or was made recklessly as a positive assertion without knowledge of its truth; (4) which was intended to be acted upon; (5) which was relied upon; and (6) which caused injury.  *Insurance Co. of N. Am. v. Morris*, 981 S.W.2d 667, 674 (Tex. 1998). There is also a statutory fraudulent inducement claim under Section 27.01 of the Business and Commerce Code.  This cause of action limits the elements to (1) a false representation of a material fact; (2) made to induce a person to enter a into a contract; and (3) relied on by that person in entering the contract.  TEX. BUS. & COM. CODE ANN. § 27.01(a)(1) (Vernon 2002); *see also Brush v. Reata Oil & Gas Corp.*, 984 S.W.2d 720, 726 (Tex. App.–Waco 1998, pet. denied). This statutory cause of action differs from the common law only in that it does not require proof of knowledge or recklessness as a prerequisite to recovery.  *Brush*, 984 S.W.2d at 726.

Fannie Mae makes four arguments in support of its motion for summary judgment: (1) Alam has insufficient evidence to prove his fraudulent inducement claim; (2) Alam disclaimed any reliance upon any information or representations provided by Fannie Mae; (3) the Addendum contained a contractual "merger clause" which precluded Alam from using any verbal representations in support of his case; and (4) Alam waived any "mistake of fact" claims, as they relate to the purchase of the property or execution of the agreement.  The Court will address each argument in turn.

### A.    Sufficiency of the Evidence

Fannie Mae argues that Alam's fraudulent inducement allegations are supported by insufficient evidence consisting of conclusory verbal statements made to him by Fannie Mae representatives.  "A conclusory statement is one that does not provide the underlying facts to

support the conclusion. Conclusory statements in affidavits are not proper as summary judgment proof if there are no facts to support the conclusions." *Rizkallah v. Conner*, 952 S.W.2d 580, 587 (Tex. App.–Houston [1st Dist.] 1997, no writ). The Court does not find Alam's assertions to be conclusory. For instance, in his affidavit, he asserts:

> I was specifically told that [the Addendum] did not change any of the terms of the [initial contract] by Swift Gore Realty and I when [sic] the document was provided it contained numerous post it notes that told me both where to sign and what the various sections of the documents discussed. None of the post it notes informed me of any of the damage limitation, termination or casualty loss provisions [sic] changes contained in the Addendum.

The above assertions contain sufficient factual allegations to support a claim for fraudulent inducement and are not merely conclusory statements. Thus, Fannie Mae's insufficiency of evidence assertion, by itself, will not entitle it to summary judgment.

**B.    Disclaimer**

Fannie Mae also argues that Alam cannot recover damages based upon a fraudulent inducement theory because any such claims were waived pursuant to the disclaimer in Paragraph 16(a) of the Addendum, which he signed. Paragraph 16(a) indicates that Alam warranted to Fannie Mae that he was "purchasing the Property solely in reliance on his own investigation and inspection of the Property and not on any information, representation or warranty provided or to be provided by the Seller, its servicers, representatives, brokers, employees, agents or assigns . . . ."

Despite this clear language, the relevant case law provides that, if Alam was fraudulently induced to enter into the real estate contract, that "fraud vitiates all documents . . . executed as part of the transaction." *Fletcher v. Edwards*, 26 S.W.3d 66, 77 (Tex. App.–Waco 2000, pet. denied) (citing *Prudential Ins. Co. of Am. v. Jefferson Assocs.*, 896 S.W.2d 156, 161-62

(Tex.1995)).   The general rule charges every person with capacity to enter into a contract as having knowledge of the words used in the contract, knowing their meaning, and understanding their legal effect.   *Indemnity Ins. Co. of North Am. v. W.L. Macatee & Sons*, 129 Tex. 166, 171, 101 S.W.2d 553, 556 (1937).   However, there is a well established exception which states that where the execution is procured by fraud, misrepresentation, or concealment, assent may be negated and the contract may be voided.   *Edward Thompson Co. v. Sawyers,* 111 Tex. 374, 234 S.W. 873 (1921); *Brown v. Aztec Rig Equip., Inc.*, 921 S.W.2d 835, 846 (Tex. App.–Houston [14th Dist.] 1996, writ denied).   Thus, although the law charges parties with knowledge of the contents of the contracts they execute, proof of fraudulent misrepresentations, when coupled with reliance on those misrepresentations, may permit parties to void their agreements.   *Amouri v. Southwest Toyota, Inc.*, 20 S.W.3d 165, 169 (Tex. App.–Texarkana 2000, pet. denied).   The law provides that, "[e]ven the failure to read a contract will be excused where the execution of the contract has been fraudulently induced."   *See Plains Cotton Coop. Ass'n v. Wolf,* 553 S.W.2d 800, 803 (Tex. Civ. App.–Amarillo 1977, writ ref'd n.r.e.).

A case similar to the one at bar is *Amouri v. Southwest Toyota, Inc.*   In that case the plaintiff went to a Toyota dealership intending to purchase a vehicle.   20 S.W.3d at 167.   The plaintiff and the salesman discussed only purchasing a vehicle.   *Id.*   The plaintiff proposed trading in his vehicle, making a substantial down payment, and paying the first installment.   *Id.* The car salesman had the plaintiff sign a form entitled "Closed End Motor Vehicle Lease Agreement."   *Id.*   The plaintiff signed it believing he was purchasing the vehicle, but in fact the form was a lease agreement.   *Id.*   Upon showing the paperwork to a friend, the friend recommended that the plaintiff confirm that he actually purchased the vehicle.   *Id.*   When plaintiff called the dealership,  the same salesman assured him that he had purchased the car.

*Id.*  The plaintiff later learned from the dealership that he had in fact only leased the car.  *Id.*  Despite the defendant's argument that fraudulent inducement can only be proven by evidence of concealment of a material fact that is not  thereafter contradicted by the terms of the agreement itself, the court ruled that defendant was not entitled to summary judgment.  *Id.* at 170-71.  In other words, the fact that the plaintiff was contesting a fact (i.e., that he intended to purchase a car) which was contradicted by the very terms of the agreement (i.e., it was a lease agreement), did not warrant summary judgment in the defendants favor or bar the plaintiff from recovery.

Though the facts here may not be as egregious as those in *Amouri*, in this case, Alam is also contesting a fact (i.e., his reliance upon Fannie Mae's representations) which is contradicted by the very terms of the agreement he signed (i.e., disclaimer provision in the Addendum).  Nonetheless, if Alam can convince a fact finder that he was fraudulently induced, the Addendum he signed, along with its disclaimer clause, may be voided.

In another case, *Schlumberger Technology Corporation v. Swanson*, 959 S.W.2d 171 (Tex. 1997), the Texas Supreme Court examined the effect of fraud upon disclaimers of reliance.  In *Schlumberger*, the parties negotiated a buyout of the plaintiff's interest in a diamond mining project.  *Id.* at 174.  The defendant represented to the plaintiffs that the project was neither technologically feasible nor commercially viable but refused to give them any information or data supporting such representations.  *Id.*  The parties executed an agreement which included the following disclaimer clause:

> [E]ach of us [the plaintiffs] expressly warrants and represents and does hereby state ... and represent ... that no promise or agreement which is not herein expressed has been made to him or her in executing this release, and that *none of us is relying upon any statement or representation of any agent of the parties being released hereby. Each of us is relying on his or her own judgment* and each has been

represented by [legal counsel] in this matter. The aforesaid legal counsel has read and explained to each of us the entire contents of this Release in Full, as well as the legal consequences of this Release . . . .

*Id.* at 180 (emphasis added). After the plaintiffs sold the project to the defendant, the defendant subsequently sold his interest for a profit. *Id.* at 174. Thereafter, the plaintiffs brought suit against the defendant for fraudulently inducing them to sell their interest at an undervalued price. *Id.* The jury found in favor of the plaintiffs, but the trial court rendered a judgment not withstanding the verdict in favor of the defendants. *Id.* at 174-75. The court of appeals reversed and affirmed the jury's verdict. *Swanson v. Schlumberger Tech. Corp.*, 895 S.W.2d 719, 744 (Tex. App.–Texarkana 1995), rev'd, *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 175 (Tex. 1997). In reversing the court of appeals, the Texas Supreme Court held that the release signed by the plaintiffs precluded all their claims as a matter of law. 959 S.W.2d at 180.

In explaining its decision, the Texas Supreme Court noted that the validity of a disclaimer depends upon the contract itself and the circumstances surrounding its formation. *Id.* at 179. The court noted, "[i]n sum, we hold that a release that clearly expresses the parties' intent to waive fraudulent inducement claims, or one that disclaims reliance on representations about specific matters in dispute, can preclude a claim of fraudulent inducement." *Id.* at 181. Yet, the court was also quick to note that a disclaimer of reliance or a merger clause (see *infra*) will not always bar a claim for fraudulent inducement. *Id.*

In reversing the court of appeals and reaching its holding that the language of the release signed by the plaintiffs precluded all of their claims as a matter of law, the Texas Supreme Court considered it significant that the parties (1) were represented by "highly competent and able legal counsel;" (2) negotiated with each other at arm's length; (3) were "knowledgeable and sophisticated business players;" (4) disagreed over the value of the mining project; and (5)

entered into the release to end that very dispute about the value of the project.  *Id.* at 180.

Before comparing the case at bar to *Schlumberger*, it is instructive to look at the circumstances surrounding the disclaimer signed in *Atlantic Lloyds Insurance Co. v. Butler*, 137 S.W.3d 199 (Tex. App.–Houston [1st Dist.] 2004, pet. filed).  In that case, a number of former residents and employees filed a lawsuit upon learning that they were exposed to a chemical that was used by maintenance workers at an apartment complex.  137 S.W.3d at 206.  The plaintiffs alleged that they had an oral agreement with the defendants to settle all the plaintiffs' claims in the underlying lawsuit for "all available" insurance policy limits.  *Id.* at 212.  They argued that they were fraudulently induced into signing a settlement agreement because the defendants misrepresented the amount of insurance coverage.  *Id.* at 207.  The defendants then sought summary judgment on the ground that the plaintiffs waived any fraudulent inducement claims when they signed releases containing a "disclaimer of reliance" provision.  *See id.* at 214.  The disclaimer consisted of the following language:

> I expressly warrant and represent to the parties hereby released and to each of them as a part of the consideration for the payment of the above-mentioned sum of money that before executing this instrument, I have fully informed myself of its terms, contents, conditions, and effect; that in making this settlement I have had the benefit of the advice of doctors and attorneys of my own choosing; and *no promise or representation of any kind has been made to me by the parties hereby released or by anyone acting for them, except as is expressly stated in this instrument. I have relied solely and completely upon my own judgment, and the advice of my counsel in making this settlement*; and I fully understand that this is a full, complete, and final release, and that the sum of money mentioned above is all the money that is to be paid to me by [defendant] as a result of the herein-described accident.

*Id.* at 216 (emphasis added).  The court upheld this disclaimer and affirmed the trial court's grant of summary judgment in favor of the defendants.  *Id.* at 288.  In support of its finding, the court found the language of the disclaimer to track the language of the disclaimer upheld in

*Schlumberger*, that the release expressed the parties' intent *unequivocally* to disclaim reliance upon representations by the defendants, and that the parties were represented by "highly competent and able counsel." *Id.* at 217. The court also stressed the fact that each release bore a signature line, signed by the plaintiffs' attorney, acknowledging that he had "fully and completely" explained the terms of the release to each plaintiff before it was signed. *Id.* Finally, the court noted that, as in *Schlumberger*, the parties sued over alleged misrepresentations which had been one of the subjects of the parties' dispute and a central reason for the settlement. *Id.*

The case at bar can be distinguished from *Schlumberger* and *Atlantic Lloyds Insurance Co.* First, the language of the disclaimer signed by Alam in Paragraph 16(a) of the Addendum is not nearly as extensive as the language of the provision signed by the plaintiffs in the two aforementioned cases, a crucial factor in both. Again, that language indicates that Alam warranted to Fannie Mae that he was "purchasing the Property solely in reliance on his own investigation and inspection of the Property and not on any information, representation or warranty provided or to be provided by the Seller, its servicers, representatives, brokers, employees, agents or assigns . . . ." Unlike the disclaimers in *Schlumberger* and *Atlantic Lloyds Insurance Co.*, nowhere does this disclaimer indicate that Alam had been fully informed about the nature of the contract/release or the full legal consequences of signing it. Nor does the disclaimer contain any mention of Alam's legal counsel. Most importantly, unlike the disclaimers in the two aforementioned cases, nowhere does Fannie Mae's disclaimer state that no promise, representation, or agreement was made to Alam which was not already expressed in its Addendum. This has two ramifications. First, it prevents the disclaimer signed by Alam from being unequivocal, because the scope of the disclaimer is limitless. Second, while, Alam

may have disclaimed reliance upon any representations made by the Defendants at the time he signed the agreement, Fannie Mae cannot expect this Court to grant it carte blanche to make either purposeful or negligent misrepresentations to purchasers after the fact. The disclaimer in the Addendum is simply not as specific as those in *Schlumberger* and *Atlantic Lloyds Insurance Co.*

Second, it is unclear from the summary judgment evidence, whether Alam was represented by counsel at all, let alone "highly competent and able counsel." Third, though the parties seem to have negotiated at arm's length, Fannie Mae makes no mention of Alam's level of sophistication dealing with real estate contracts. Fourth, unlike the facts of *Schlumberger* and *Atlantic Lloyds Insurance Co.*, the disclaimer here does not clearly go to the heart of the dispute. Where, for instance, in *Atlantic Lloyds*, the disclaimer specifically addressed representations regarding the parties' settlement, the disclaimer here does not clearly or specifically address any representations regarding the contracting process. The disclaimer merely refers to Alam's "purchasing the Property solely in reliance on his own investigation and inspection of the Property." While the disclaimer says that the purchaser was not relying on "any information, representation or warranty" provided by the seller or its representatives, this language seems to apply only to information, representations, and warranties regarding the land itself (i.e., the investigation and inspection of the property). Not the contracting process. Even if the disclaimer was intended to apply to representations regarding the contracting process, it is clearly not unequivocal. Finally, Fannie Mae has presented no evidence, as in *Schlumberger,* that Alam and Fannie Mae had any discussions involving the contracting process, which is the very subject matter Alam claims was misrepresented to him.

In sum, in this case, there is present only one of the factors (i.e., an arm's length

transaction) deemed to be so important in *Schlumberger* and *Atlantic Lloyds Insurance Co.* Accordingly, the disclaimer may be voided if a fact finder determines that Alam was fraudulently induced to sign the addendum. Thus, the disclaimer will not bar Alam's suit for fraud, misrepresentation, and negligent misrepresentation.

### C. Merger Clause

Fannie Mae also argues that the Addendums' merger clause precludes Alam from using any verbal representations in support of his fraud, misrepresentation, and negligent misrepresentation claims. The Court finds this argument unpersuasive. The parol evidence rule precludes the enforcement of inconsistent prior or contemporaneous agreements, if the parties have executed a valid integrated agreement. *Lewis v. Adams*, 979 S.W.2d 831, 836 (Tex. App.–Houston [14th Dist.] 1998, no pet.). The parol evidence rule is particularly applicable where the contract contains a "merger clause," indicating that the written contract contains a recital that it is the entire agreement between the parties. *See Weinacht v. Phillips Coal Co.*, 673 S.W.2d 677, 679 (Tex. App.–Dallas 1984, no writ).

Yet, as the Texas Supreme Court noted in *Schlumberger*, a disclaimer of reliance *or* a merger clause will not always bar a claim for fraudulent inducement. *Id.* Moreover, in the very same case cited by Fannie Mae to support its argument, the court recognized that parol evidence is admissible to show (1) the execution of a written agreement was procured by fraud, (2) an agreement was to become effective only upon certain contingencies, or (3) the parties' true intentions if the writing is ambiguous. *Gonzalez v. United Bhd. of Carpenters and Joiners of Am., Local 551*, 93 S.W.3d 208, 210 (Tex. App.–Houston [14th Dist.] 2002, no pet.) (citing *Litton v. Hanley*, 823 S.W.2d 428, 430 (Tex. App.–Houston [1st Dist.] 1992, no writ)). As discussed above, there is a material question of fact as to whether or not Alam was fraudulently induced.

Accordingly, Fannie Mae is not entitled to summary judgment on the basis of its merger clause because parol evidence may be admitted to show that the agreement was procured by fraud.

### D.     Mistake of Fact

Pointing to Paragraph 17(E) of the Addendum, Fannie Mae also argues that Alam waived any claims entailing a "mistake of fact" as "such claims relate to the purchase of the property or entering into or execution of or closing under this agreement."  While Alam may have been mistaken as to the rights he was giving up by signing the Addendum, nowhere has he alleged a basis of recovery under a mistake of fact claim.  Rather, his claim is that he was fraudulently induced.  The Court is, therefore, unpersuaded by this argument.

## II.     Breach of Contract and the Application of the Addendum to the Second Contract

In his First Amended Complaint, Alam claims that Fannie Mae breached its contract when it failed to close on the Lugary property.  Fannie Mae seeks summary judgment on the basis of its contractual rights.  Its main argument is that the contract at issue gave Fannie Mae the right to terminate the contract.  Again Fannie Mae argues that there were changes affixed to the initial Addendum which then served as a second contract supplanting the terms of the initial contract.  Fannie Mae stresses that Paragraph 18(d) of the Addendum provided that the seller could extend the closing date or terminate the contract altogether if full payment toward a hazard insurance claim was not confirmed before the date set for closing.  Fannie Mae also stresses that Paragraph 21 of the Addendum places the entire risk of loss on the Purchaser (i.e., Alam) if there is any casualty loss after the contract is signed but before closing, and the seller may, at its sole discretion, terminate the contract.  Fannie Mae argues that it chose to terminate the agreement and did so on September 10, 2002, when it sent Alam a letter, written by Daniel D. Gray, Associate General Counsel.

In response, Alam argues that, because he allowed the initial contract and/or Addendum to lapse past the closing date, the Addendum had no bearing upon the second transaction. He asserts that he never approved or affixed his signature to any changes on the Addendum, indicating that the Addendum never served as a second contract. He argues the contract made pursuant to the first transaction expired on July 19, 2002, according to the terms of the Addendum itself. Alam alleges that, after that date, he and Fannie Mae entered into new negotiations directly and without the assistance of Swift Gore as an intermediary. According to Alam, no new Addendum was signed with respect to the second transaction, which would have given Fannie Mae the power to terminate the contract. The Court finds that there is a material issue of fact as to whether the Addendum governed the second transaction between Alam and Fannie Mae and as to whether the Addendum, with its apparent changes, served as a second contract.

Fannie Mae also seeks summary judgment on the ground that it had a contractual right to terminate the agreement based upon Alam's insistence that title be taken in the name of "Doctors Corporation of America" instead of Alam individually. It argues that both the initial contract and an Addendum named Alam as the buyer and that Alam represented in the Addendum that he intended to occupy the property as his primary residence. Fannie Mae argues that Alam committed a material breach or material misrepresentation when he tried to unilaterally impose a different purchaser upon Fannie Mae. Thus, pursuant to Paragraph 19 of the Addendum, Fannie Mae argues that it had a right to terminate the contract.

Even if the Addendum did apply to the second transaction, there is another material question of fact as to whether Fannie Mae had the right to terminate the transaction. In his affidavit, Alam has put forth facts demonstrating that he offered to take the property in his own

name after Fannie Mae vehemently refused to sell the property to the corporate entity he created. There is thus a material question of fact as to whether Alam is entitled to relief with regard to Fannie Mae's termination of the second transaction.

## III.     Negligence

Fannie Mae also seeks summary judgment on the negligence claim asserted by Alam. Alam's allegation is essentially that Fannie Mae was negligent in advising Alam about the effect the Addendum had on his rights under the initial contract. In order to prevail Alam would have to seek damages for breach of a duty imposed by law as opposed to a duty created under the contract. *See Southwestern Bell Co. v. Delaney*, 809 S.W.2d 493, 494 (Tex. 1991). In his complaint, Alam alleges a duty under the Texas Real Estate Dealers License Act. This Court has found no case law supporting the existence of such a duty, nor has Alam cited any authority for such a proposition. Alam also alleges a duty with respect to the parties' relationship to the transaction. Yet any such duty would clearly only arise from the parties contractual relationship. *See* 809 S.W.2d at 495. Because the only duties Fannie Mae owed to Alam were those imposed under the contract, and none imposed by law, Alam's negligence cause of action sounds only in contract and not in tort. Alam's negligence claim thus fails as a matter of law and Fannie Mae is entitled to summary judgment with respect to that claim.

## IV.     Conspiracy

Fannie Mae has also moved for the Court to dismiss Alam's conspiracy cause of action. To support a claim for civil conspiracy, the plaintiff has the burden of showing that two or more persons acted with a shared objective to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means. *Great Nat'l Life Ins. Co. v. Chapa*, 377 S.W.2d 632, 635 (Tex. 1964); *State v. Standard Oil Co.*, 130 Tex. 313, 107 S.W.2d 550, 559 (1937). The

elements are (1) two or more persons; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result.  15A C.J.S. Conspiracy § 1(2) (1967).

Alam has alleged that Fannie Mae and Swift Gore acted in concert to misrepresent (1) the condition of the Lugary property and (2) the availability of insurance proceeds to compensate for the damage to the property.  Fannie Mae argues that it is entitled to summary judgment on Alam's conspiracy claims.  The Court agrees.  Alam argues that he was induced to pay a surveying team under false pretenses because Fannie Mae and Swift Gore conspired to misrepresent the condition of the property.  Yet, Mr Alam has presented insufficient evidence to prove that the Defendants had a meeting of the minds.  In his pleading Alam offers the highly conclusory statement that "Defendants had a meeting of the minds in [sic] with respect to the misrepresentation and concealment of the amount of damage done to the property and the availability of insurance."  Nowhere in his response to Fannie Mae's motion for summary judgment does Alam offer any substantial evidence to prove the third element above.  Thus, Fannie Mae satisfied its burden of demonstrating the absence of a genuine issue of material fact, *Celotex*, 477 U.S. at 323, and is entitled to summary judgment with respect to Alam's conspiracy claim.

## V.    Contractual Waiver of Jury Trial

In its motion for summary judgment, Fannie Mae argues that Alam contractually waived his right to a jury in the Addendum to the initial contract and is not entitled to a jury trial as a matter of law.  The Court will first address the waiver provision with regard to Alam's fraud, misrepresentation, and negligent misrepresentation claims.  Fannie Mae cites *Civil v. Waterman S.S., Corp*, 217 F.2d 94, 97 (2nd Cir. 1954), for the proposition that the right of jury trial is

personal to the litigant who may waive it by his action or nonaction. Yet, this 1954 case did not deal with contractual waivers. That case was an admiralty case in which the libelant chose not to have a jury trial. 217 F.2d at 97. Thus, the Court does not find that case to be totally on point. In contrast, Alam cites an Texas Supreme Court case, *In re Prudential Insurance Co. of America and Four Partners, L.L.C.*, 148 S.W.3d 124 (Tex. 2004), stating that waivers of constitutional rights must be knowing and voluntary, and with full awareness of the legal consequences.

In *Byrd v. Blue Ridge Rural Elec. Co-op.*, Inc., 356 U.S. 525 (1958), the respondent in a diversity action argued that a particular fact question was to be decided by the judge and not the jury in accordance with a decision by the South Carolina Supreme Court. 356 U.S. at 534. The United States Supreme Court, however, held that, even though allowing a jury to hear the case could substantially affect the outcome, federal courts are permitted to examine countervailing considerations of federal interest in determining the applicability of state law. *Id.* at 537-38. The Supreme Court thus held that the petitioner was entitled to a jury trial despite state law to the contrary. *Id.* at 540. In making this decision the court stressed the federal policy favoring jury decisions of disputed factual questions and the influence of the Seventh Amendment right to a jury. *Id.* at 537, 538.

Thus, even if the case cited by Fannie Mae were to control in the case at bar, that case does not accord with the strong federal policy favoring jury decisions. Thus, there would appear to be no strong countervailing federal interest in applying the federal case cited by Fannie Mae to this case. The Court thus finds *In re Prudential Insurance Co.* to govern the case at bar.

In *In re Prudential Insurance Co.*, the Texas Supreme Court examined a number of factors

in reaching its decision that the parties' contractual waiver was enforceable. These factors were that the parties had negotiated commercial leases prior to the occasion in dispute and they were represented by counsel during a number of negotiations over the disputed transaction. 148 S.W.3d at 134. The Texas Supreme Court upheld the waiver provision even though the plaintiffs in that case did not read the jury waiver, were not told that it was included, and did not bargain for it. *See id.*

Similar to Alam's claims in the case at bar, the plaintiffs in *In re Prudential Insurance Co.* argued that a jury waiver should not be enforced when it is part of an agreement alleged to have been fraudulently induced. *Id.* Yet the court noted that "[a]ny provision relating to the resolution of future disputes, included as part of a larger agreement, would rarely be enforced if the provision could be avoided by a general allegation of fraud directed at the entire agreement." *Id.* Thus, the court upheld the waiver clause because the plaintiffs did not allege or argue that the specific waiver clause itself was the product of fraud or coercion. *Id.*[2]

By contrast, Alam alleges that the specific jury waiver clause itself was the product of fraud. In the section of his response in which he discusses the jury waiver provision, Alam argues that Swift Gore, the intermediary, indicated to him that the Addendum was merely a supplemental earnest money contract, which was identical or almost identical to the one he had

---

[2] The holding of *In re Prudential Insurance Co.* is not controlling with respect to Alam's fraudulent inducement claim. In other words, *In re Prudential Insurance Co.* does not mandate a conclusion that the Addendum's disclaimer bars Alam's fraudulent inducement claim. In this case Alam's fraudulent inducement *is* directed at the Addendum as a whole (i.e., "the larger agreement"), not just the disclaimer clause. Therefore, under *In re Prudential Insurance Co.*, Alam is not required to plead that the disclaimer clause itself was the product of fraud or coercion. Thus the same enforcement problems (i.e., voiding parts of an agreement only by alleging a general fraud claim) that concerned the court in *In re Prudential Insurance Co.* do not apply.

previously executed. Moreover, Alam argues that he was never represented by an attorney during his negotiations, never negotiated the terms of the sale other than price and the name in which title was to be taken, was not in the business of purchasing Fannie Mae properties, and was never made aware of any of the terms in the Addendum. Accordingly, Alam has not waived his rights to a jury trial as a matter of law.

## VI. Specific Performance

Fannie Mae has moved to dismiss Alam's prayer for specific performance as pled in Paragraph 12.2 of his First Amended Complaint. Fannie Mae relies, however, on Paragraph 17(A) of the Addendum which states that Alam waives "all rights to file and maintain an action against the Seller for specific performance." The Court presumes that Alam is seeking specific performance with regard to his claim that Fannie Mae breached its contract by unjustifiably terminating the second transaction. As stated earlier, however, there is a material question of fact as to whether the terms of the Addendum govern the second transaction. Thus, Fannie Mae is not entitled to summary judgment with regard to Alam's prayer for specific performance.

## VII. Motion to Dismiss Punitive Damages

Pursuant to his fraud claim, Alam has filed for exemplary, or punitive damages. Fannie Mae has filed a Rule 12(b)(6) Motion to Dismiss Punitive Damages Claim (Docket # 28). Fannie Mae argues that it is a "federal instrumentality" which, as a matter of law, cannot be held liable for punitive damages.

### A. Standard of Review

Rule 12(b)(6) provides that a party may move to dismiss an action for "failure to state a claim upon which relief may be granted." FED. R. CIV. P. 12(b)(6). When considering a Rule 12(b)(6) motion, a court must accept the plaintiff's allegations as true and draw all reasonable

inferences in its favor.  *See Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 164 (1993); *United States v. Gaubert*, 499 U.S. 315, 327 (1991).  The court may not look beyond the face of the pleadings to determine whether relief should be granted based on the alleged facts.  *See Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999) (citing *St. Paul Ins. Co. of Bellaire, Texas v. AFIA Worldwide Ins. Co.*, 937 F.2d 274, 279 (5th Cir.1991), *cert. denied*, 502 U.S. 1030 (1992)); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).  "A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."  *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *see also Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Bonner v. Henderson*, 147 F.3d 457, 459 (5th Cir. 1998) (quoting *Rubinstein v. Collins*, 20 F.3d 160, 166 (5th Cir. 1994) (citation omitted)).  Dismissal can be based on either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.  *See Frith v. Guardian Life Ins. Co. of Am.*, 9 F. Supp. 2d 734, 737-38 (S.D. Tex. 1998).

**B.    Discussion**

The parties cite to two different bodies of case law.  Fannie Mae cites a variety of cases in which it was held to be a federal instrumentality.  Yet upon closer inspection, none of these cases are exactly on point.  For instance, in *FNMA v. Leftkowitz,* 390 F. Supp. 1364, 1368 (S.D.N.Y. 1975), the Southern District of New York held that Fannie Mae was a federal instrumentality for purposes of a Supremacy Clause claim that a state statute requiring mortgagees to pay interest on escrow funds was unconstitutional.  Fannie Mae also cites *Kidder Peabody & Co. v. Unigestion Int'l, Ltd.*, 903 F. Supp. 479, 495-96 (S.D.N.Y. 1995), in which Fannie Mae was held to be a federal instrumentality for purposes of exemption from liability for securities that it issued.  Another case cited by Fannie Mae is  *Paslowski v. Standard*

*Mortgage Corp. of Georgia*, 129 F. Supp.2d 793, 799-800 (W.D. Pa. 2000), where the Federal Home Loan Mortgage Corp. (Freddie Mac" or "FHLMC"), Fannie Mae's virtual twin, was held to be a federal instrumentality for purposes of the *Merill* doctrine, under which federal instrumentalities are not bound by the unauthorized acts of their agents.[3]

In support of its argument that it is exempt from liability for punitive damages, Fannie Mae also cites the *Leftkowitz* court which wrote, a "glance at the federal legislation involved, 12 U.S.C. § 1716 *et seq.*, leaves little doubt that Congress intended FNMA to be recognized as a federal instrumentality." 390 F. Supp. at 1368. Fannie Mae points to various parts of that legislation in its motion. For instance, Fannie Mae notes that (1) The Secretary of the Treasury has regulatory power over some Fannie Mae transactions;[4] (2) the President has the power to appoint five of Fannie Mae's eighteen directors and may remove any for good cause;[5] (3) Fannie Mae is exempted from having to qualify to do business in any state;[6] (4) Fannie Mae has immunity from state taxation;[7] (5) Fannie Mae is authorized to issue mortgage backed securities without registration as required by the federal securities laws;[8] and (6) Fannie Mae is congressionally authorized to borrow up to $2.25 billion from the United States treasury.[9]

---

[3] *See Federal Crop Insurance Corp. v. Merrill*, 332 U.S. 380, 68 S. Ct. 1, 92 L.Ed. 10 (1947).

[4] *See* 12 U.S.C. § 1719.

[5] 12 U.S.C. § 1723(b).

[6] 12 U.S.C. § 1723a(a).

[7] 12 U.S.C. § 1723a(c)(1).

[8] 12 U.S.C. § 1719(d).

[9] 12 U.S.C. § 1719(c). Fannie Mae also cites 12 U.S.C. § 1723a(h) to support its assertion that it is subject to the general regulatory power of the Secretary of the United

Alam, by contrast, cites a number of cases in which courts have refused to declare Fannie Mae a federal instrumentality. By analogy, Alam invokes, *Rheams v. Bankston, Wright & Greenhill*, 756 F. Supp 1004, 1008 (W.D. Tex. 1991), where a district court in the Western District of Texas held that a federal home loan bank was not a federal instrumentality for purposes of the Federal Tort Claims Act ("FTCA"). Alam also refers to *Lewis v. United States*, 680 F.2d 1239 (9th Cir. 1982), a Ninth Circuit case discussed by the *Rheams* court. The Ninth Circuit held that even Federal Reserve Banks were not "federal instrumentalities" for purposes of the FTCA. 680 F.2d at 1241. Rather, the Ninth Circuit held that Federal Reserve Banks are independent, privately owned, and locally controlled corporations. *Id.* Finally, Alam refers to the fact that, in *Lewis,* the Ninth Circuit referenced the United States Supreme Court Decision in *United States v. Orleans*, 425 U.S. 807, 96 S. Ct. 1971 (1976). The *Lewis* court cited *Orleans* for the proposition that entities are not rendered a federal agency or instrumentality simply because the agency is organized under federal regulations and heavily funded by the federal government. *See* 680 F.2d at 1241 (citing *Orleans*, 425 U.S. at 808). By contrast to the Federal Reserve Banks, Alam argues that Fannie Mae is a private entity, represented by private counsel, and whose claims are resolved directly through the judicial process rather than the Attorney General's office. Moreover, Alam refers to the fact that the amount of regulations covering Fannie Mae pale in comparison to the regulations placed on the Federal Reserve Bank system. Thus, Alam argues that Fannie Mae is not a federal instrumentality and should not be exempt from punitive damages liability.

---

States Housing and Urban Development Department, which must approve new programs before they are implemented by Fannie Mae. However, that provision was repealed by Pub. L. No. 102-550, tit. XIII, § 1381(k), 106 Stat. 3997 (1992).

Alam raises some very clever arguments, however, similar to Fannie Mae, none of the cases he cites are entirely on point. First, none of the cases cited by Alam expressly refer to Fannie Mae's status under the FTCA. Second, none of the cases cited by Alam refer to Fannie Mae's exposure to punitive damages. Accordingly, none of the cases cited by Alam require the Court to subject Fannie Mae to exemplary or punitive damages.

This Court finds *Paley v. Federal Home Loan Mortgage Corp.*, 1994 WL 327659 (E.D. Pa. 1994), cited by Fannie Mae to be particularly persuasive. In *Paley*, the plaintiffs sued Freddie Mac after they learned that Freddie Mac did not own the whole parcel of land it purported to sell to the plaintiffs. 1994 WL 327659, at *1. The court noted that Freddie Mac's exclusion from liability under the FTCA "does not necessarily make it liable for punitive damages." *Id.* at *2.

It is clear from the case law cited by the parties, that an organization's status as a "federal instrumentality" may differ depending upon the party (e.g., principal or agent) committing the tortious act, *see Paslowski*, 129 F. Supp.2d 793, or the nature of the suit being brought, *see Leftkowitz,* 390 F. Supp. 1364 (dealing with securities); *Kidder Peabody*, 903 F. Supp. 479 (dealing with the Supremacy Clause). One court has noted that "an entity simultaneously can be a federal instrumentality for some purposes but not a federal agency or entity for others." *Paslowski*, 129 F. Supp.2d 801, n. 12 (citing *Mendrala v. Crown Mortgage Co.*, 955 F.2d 1132, 1139 (9th Cir.1992) ("conclusion that FHLMC is not a 'federal agency' for purposes of [the FTCA] does not preclude a determination that it is a federal instrumentality for other purposes, including purposes of estoppel and the Merrill doctrine")). Regardless of whether Fannie Mae is a federal instrumentality for purposes of tort liability under the FTCA in the Southern District of Texas, a question not presented in the case at bar, the Court holds that Fannie Mae is a federal

instrumentality of the government for purposes of exemption from punitive damages.

Fannie Mae is a federal government-sponsored private corporation created by Congress to establish secondary market facilities for home mortgages and, among other things, to provide stability in the secondary market for home mortgages. *See* 12 U.S.C. §§ 1716, 1716b. Congress has affirmed Fannie Mae's national goal, as set forth in Section 1441 of Title 42, of a "decent home and a suitable living environment for every American family." The Court agrees with Fannie Mae that allowing punitive damages awards could undermine Fannie Mae's ability to purchase mortgage loans and may decrease the availability of mortgage credit. This would impede Fannie Mae's national goal. In light of the significant role played by Fannie Mae in the national housing market, any exemptions from punitive damages immunity are better declared by Congress than this Court. Thus, Alam's punitive damages claim is dismissed.

## VIII.  Defendant's Attorney's Fees

In light of the fact that there remain material questions of fact, any award of attorney's fees would be improper at this time.

## IX.  Alam's Motion For Remand

In Alam's response to Federal National Mortgage Association's 12(b)(6) Motion to Dismiss Punitive Damages Claim (Docket # 36), he moved the Court to remand the case to state court. Alam's basis for remand is twofold. He argues that (1) Fannie Mae is not a federal instrumentality for jurisdictional purposes and thus federal instrumentality jurisdiction no longer exists and (2) upon the joinder of, Swift Gore, a Texas domiciliary, diversity jurisdiction no longer exists.

The lack of subject matter jurisdiction may be raised at any time during pendency of the case by any party or by the court. FED. R. CIV. P. 12(h)(3). However, Alam's arguments should

have been raised in a separately filed motion to remand. The court thus denies Alam's motion. Alam is granted leave file a separate motion to remand thereby providing Fannie Mae with more adequate notice and an opportunity to respond.

**X.      Motion for Continuance**

Alam has requested the Court for an extension of time to reply to Fannie Mae's Motion to Dismiss Punitive Damages Claim until the date that his response was actually filed. The Court grants this motion.

**Conclusion**

For these reasons, the Court GRANTS in part and DENIES in part Fannie Mae's Motion for Summary Judgment (Docket # 29), GRANTS Fannie Mae's Rule 12(b)(6) Motion to Dismiss Punitive Damages Claim (Docket # 28), DENIES Alam's Motion to Remand (Dkt. #36), and GRANTS Alam's Motion for Continuance (Dkt. #36).

It is so ORDERED.

Signed this 29th day of September, 2005.


_____
JOHN D. RAINEY
UNITED STATES DISTRICT JUDGE