UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SAM ALAM, | § | |
| | § | |
|    Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-02-4478 |
| | § | |
| FANNIE MAE and SWIFT GORE | § | |
| REALTY, INC. | § | |
| | § | |
|    Defendants. | § | |

## MEMORANDUM OPINION & ORDER

Pending before the Court are four motions filed by Plaintiff, Defendants, and a potential intervenor regarding the alleged settlement in this case. Dkt. Nos. 56 (containing two motions), 59 & 60. A brief account of the procedural history is necessary before the Court addresses and disposes of the pending motions.

**Procedural Background**

Plaintiff sued the Federal National Mortgage Association (Fannie Mae) in the 129th Judicial District of Harris County, Texas, on October 28, 2002, seeking to enforce a contract for the sale of real property in Harris County, Texas. Dkt. # 1. Fannie Mae removed the lawsuit on November 27, 2002, invoking this Court's jurisdiction under 28 U.S.C. § 1332 and also relying on what appears to be a Congressional grant of federal jurisdiction in Fannie Mae's statutory charter set forth in 12 U.S.C. § 1723a. *Id.* at 1–2. On June 13, 2003, Plaintiff filed a First Amended Complaint that (1) retained the breach of contract claim against Fannie Mae; (2) added Swift Gore Realty, Inc. (SGR), which had apparently acted as Fannie Mae's listing agent, as a defendant; (3) and asserted a new claim for common law fraud against both Defendants for alleged misrepresentations in the negotiations leading to the execution of the contract. Dkt. # 11.

After litigating the case for approximately three years, the parties attempted to resolve their

disputes through mediation. However, the parties informed the Court on January 12, 2006, that mediation had failed and that they intended to proceed to trial in March 2006. Dkt. # 50. At that time, the Court conducted several telephone conferences with the parties in an attempt to resurrect the settlement negotiations. The next day, January 13, 2006, the parties announced to the Court via telephone that they had, in fact, agreed to settle their disputes with a cash payment of $50,000 from Defendants to Plaintiff in exchange for a full release of Plaintiff's claims against Defendants and any un-named potential defendants. Although this announcement was made during a telephone conference at which the Court was presiding, there is no record of the oral agreement other than the Court's January 13, 2006 conference memorandum stating that "[a]fter various conferences, the parties announced that they had reached an agreement to settle the case. The closing papers shall be submitted to the Court by January 31, 2006." Dkt. # 51. The parties further advised the Court that their agreement to settle contemplated a subsequent writing.

Two weeks later, on January 26, 2006, the Court was advised that the Houston law firm of Brown Sims P.C. had asserted a lien against the settlement proceeds based on allegedly unpaid invoices for legal services that Plaintiff had incurred in unrelated litigation. Dkt. # 53. On January 27, 2006, the parties and Brown Sims participated in a telephone conference with the Court during which Plaintiff indicated that he no longer wished to settle on the terms announced to the Court on January 13, 2006. At that time, the Court instructed the parties that they had ten days to file any motions regarding the settlement in light of the lien asserted by Brown Sims and Plaintiff's apparent refusal to participate in the settlement. Dkt. # 54.

On February 6, 2006, Defendants filed a Joint Motion to Enforce Settlement and Enter a Final Judgment. Dkt. # 56. Defendants also filed an interpleader action that same day naming Brown Sims and Plaintiff as Claimants to the settlement proceeds. Dkt. # 57 & Dkt. # 58. Attached as Exhibit A to the interpleader action is what purports to be a contract executed by Plaintiff and Brown Sims on

January 17, 2006, that appears to grant Brown Sims a security interest in the settlement proceeds from this litigation as security for the balance of Plaintiff's unpaid invoices. *See id.* Also that same day, Plaintiff filed a motion to deny enforcement of the settlement. Dkt. # 59. Finally, Brown Sims filed a Motion to Intervene. Dkt. # 60.

On August 22, 2006, the Court conducted a hearing on the cross-motions regarding the settlement. All of the parties and Brown Sims were present at the hearing and gave testimony under oath. Plaintiff appeared pro se and testified on his own behalf. The testimony of those present can be briefly summarized as follows. Plaintiff testified that he decided not to follow through with the settlement after receiving draft closing papers containing what he claimed were additional terms that would have required him to keep private the details of the settlement. Plaintiff also testified that the instrument purporting to grant Brown Sims a lien on the settlement proceeds was a forgery. Defendants testified that it was their belief that Plaintiff decided to back out of the settlement only after discovering that Brown Sims intended to enforce the purported lien by pursuing the settlement proceeds he was to receive from Defendants. Finally, Brown Sims' representative testified that the purported lien was not a forgery but rather a valid contract duly executed by Plaintiff for the purpose of resolving his unpaid invoices for legal services.

**Analysis**

The initial question raised by the cross-motions on the settlement is whether this Court should enforce the oral agreement announced by the parties on January 13, 2006. Defendants argue that the oral agreement should be enforced on grounds that the parties complied with Texas Rue of Civil Procedure 11, which provides, in relevant part, as follows: "[N]o agreement between attorneys and parties touching any suit pending will be enforced unless it be in writing, signed and filed with the papers as part of the record, or unless it be made in open court and entered of record." TEX. R. CIV. P. 11. Defendants cite *City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671 (Tex. 1979)

(hereinafter *CCBA*), apparently as support for the proposition that no record of an oral agreement between the parties is required for purposes of Rule 11 if the agreement is later reflected in an order or judgment. *Id.* at 677–68 ("The trial court's judgment reflects that the parties by agreement expressly presented only one issue to the court, and the requirements of [R]ule 11 were met when the agreement was reflected in the judgment.").

But the question presented to the Texas Supreme Court in *CCBA* was whether the appellant could raise an objection to summary judgment on appeal that had been orally waived by the appellant before the trial court. *Id.* at 674. The facts of that case indicate that appellant Clear Creek Basin Authority orally agreed in open court during a summary judgment hearing to narrow the issues under consideration by the trial court to a single question of law. *Id.* at 673. No transcript of the hearing was made, but the trial court's summary judgment order confirmed that appellant did, in fact, agree to discard one of its causes of action. *Id.* The Texas Supreme Court held that "parties in open court should be able to narrow the issues presented ... provided the agreement is reduced to writing, signed, and filed with papers or 'entered of record.' *Id.* at 677. The court further held that "[R]ule 11 is satisfied if the oral waiver or agreement made in open court is described in the judgment or an order of the court." *Id.*

Although Defendants here did nothing more than cite the *CCBA* case without explanation or further argument, their point seems clear; specifically, that the oral agreement announced to this Court on January 13, 2006, did not violate Rule 11 even though there was no transcript of the telephone conference between the parties because the Court confirmed the agreement in its conference memorandum. If this Court is persuaded that *CCBA* reflects Texas law such that oral agreements between the parties not made on the record but confirmed in a later order of the trial court are deemed to be compliant with Rule 11, then it would seem that the settlement agreement in this case should be enforced.

4

However, the *CCBA* case has been the subject of some disagreement among the lower appellate courts in Texas. For instance, one such court has held that the Texas Supreme Court's holding in *CCBA* "is limited to summary judgment proceedings" based on language in the *CCBA* opinion indicating that the holding was based, at least in part, on policy considerations related to whether it was practical for a court reporter to be present during summary judgment hearings. *Fidelity & Cas. Co. of New York v. McCollum*, 656 S.W.2d 527, 529–30 (Tex. App.—Dallas 1983, writ ref'd n.r.e.).

The *Fidelity* opinion was cited favorably by the Texas Supreme Court in *Kennedy v. Hyde*, 682 S.W.2d 525 (Tex. 1984), for the proposition that "[i]n determining whether a particular situation warrants an exception to Rule 11, an examination of the policy behind the rule is always paramount." 682 S.W.2d at 529. While that later citation by the Texas Supreme Court is certainly no ringing endorsement of the *Fidelity* court's holding that *CCBA* was only applicable in the summary judgment context, it is at least some indication that the Texas Supreme Court was of the opinion that policy considerations should dominate judicial applications of Rule 11. This Court also notes that the *Kennedy* court referenced its prior holding in *CCBA* in dicta that described that opinion as a liberal interpretation of Rule 11 "to conform to modern trial practice," an apparent reference to the common practice among practitioners of narrowing summary judgment issues off the cuff at oral hearings. *Id.* at 529.

Moreover, the Fifth Circuit has held that Rule 11, "although to be found among the Texas Rules of Civil Procedure, is nonetheless also a rule of substance akin to the parol evidence rule." *Anderegg v. High Standard, Inc.*, 825 F.2d 77, 80 (5th Cir. 1987). The court in *Anderegg* noted, in a passage that bears quoting at length, that

> [t]he rule plainly contemplates that there will be agreements touching pending cases arrived at between counsel – and validly arrived at, from the vantage point of general contract law – that Rule 11 will prohibit enforcing: oral agreements not spread on the record and confirmed in open court, for example. It is clear that the rule contemplates that something *more* is required for the enforcement of such an agreement than that it be a valid contract. That something more is its reduction to writing and signature, or their substantial equivalents: dictation into

5

> the record of the agreement's substance and assent to it on the record by all parties sought to be bound.

*Id.* at 80–81 (emphasis in original).[1]  As the Texas Supreme Court stated in *Kennedy*, "[a]greements of counsel in the course of a judicial proceeding which affect the interests of their clients should not be left to the fallibility of human recollection.  This is especially true with reference to agreed judgments which finally dispose of the rights of the litigants*."  Kennedy*, 682 S.W.2d at 530 (quoting *Wyss v. Bookman*, 235 S.W. 567, 569 (Tex. Comm'n App. 1921)).

Plaintiff in this case admitted under oath that he did, in fact, agree to the essential terms of the settlement agreement.  But he further testified that he balked at executing the final closing papers because Defendants included additional terms to which he did not agree.  Plaintiff's testimony on this point certainly seems self-serving given that his rejection of the final settlement appears to have coincided with Brown Sims' attempt to enforce its purported lien on the settlement proceeds.  But that does not change the fact that the oral agreement announced to this Court was neither made in open court nor dictated into the record.  Accordingly, this Court is simply not willing to enforce an agreement that, in the words of the *Kennedy* court, would "finally dispose of the right of the litigants" when the parties have so thoroughly failed to comply with what the Fifth Circuit has held to be a substantive rule of Texas contract law.  To do otherwise would require this Court to interpret the parties' oral agreement and supervise the execution of closing papers – precisely the sort of vexing judicial involvement that Rule 11 seems designed to prevent.

---

[1]The Court notes that the trial court in *Anderegg* was sitting in diversity while this Court's jurisdiction is based on Fannie Mae's Congressional charter.  However, the claims advanced by Plaintiff in this case are grounded in Texas common law.  Moreover, Fannie Mae has urged this Court to apply Rule 11 in this case, which the Court interprets as a tacit admission that Texas law should supply the rules for evaluating the alleged settlement.

Accordingly, the Court hereby rules as follows:

1. The Motion to Enforce Settlement (Dkt. # 56) is **DENIED**;

2. The Motion for Judgment (Dkt. #56) is **DENIED**.

3. Plaintiff's motion to deny enforcement of the settlement (Dkt. # 59) is **GRANTED** only insofar as is consistent with this Order.

4. The Motion to Intervene (Dkt. # 60) is **DENIED** as moot.

5. The interpleader actions (Dkt. # 57 & Dkt. # 58) are **DISMISSED** as moot.

All other pending motions will be considered by the Court in due course. This case will be set for a scheduling conference so that the Court may issue an Amended Scheduling Order. All other unexpired deadlines are hereby stayed.

It is so ORDERED.

Signed this 29th day of September, 2006.

_____
JOHN D. RAINEY
UNITED STATES DISTRICT JUDGE