UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SAM ALAM, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-02-4478 |
| | § | |
| FANNIE MAE and SWIFT GORE | § | |
| REALTY, INC. | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION & ORDER

Pending before the Court is Brown Sims, P.C.'s ("Brown Sims") Motion to Intervene (Dkt. No. 131). Although the Court and parties have long been familiar with the history of this case, a brief account of the procedural background is necessary before the Court addresses and disposes of the pending motion.

### Procedural Background

On October 28, 2002, Plaintiff Sam Alam ("Plaintiff") sued the Federal National Mortgage Association ("Fannie Mae") in the 129th Judicial District of Harris County, Texas, seeking to enforce a contract for the sale of real property in Harris County, Texas. Dkt. No. 1. Fannie Mae removed the action to federal court on November 27, 2002. *Id.* at 1–2. Plaintiff then filed a First Amended Complaint that (1) retained the breach of contract claim against Fannie Mae; (2) added Swift Gore Realty, Inc. ("Swift Gore"), which had apparently acted as Fannie Mae's listing agent, as a defendant; (3) and asserted a new claim for common law fraud against both Defendants for alleged misrepresentations in the negotiations leading to the execution of the contract. Dkt. No. 11.

After litigating the case for approximately three years, the parties attempted to resolve their disputes through mediation. However, the parties informed the Court on January 12, 2006 that mediation had failed and that they intended to proceed to trial in March 2006. Dkt. No. 50. The Court proceeded to conduct several telephone conferences with the parties aimed at reviving the settlement negotiations. On January

13, 2006, the parties announced to the Court via telephone that they had, in fact, agreed to settle their disputes with a cash payment of $50,000 from Defendants to Plaintiff in exchange for a full release of Plaintiff's claims against Defendants and any un-named potential defendants.

Two weeks later, on January 26, 2006, the Court was advised that Brown Sims, a Houston law firm, had asserted a lien against the settlement proceeds based on allegedly unpaid invoices for legal services that Plaintiff had incurred in unrelated litigation. Dkt. No. 53. On January 27, 2006, the parties and Brown Sims participated in a telephone conference with the Court during which Plaintiff indicated that he no longer wished to settle on the terms announced to the Court on January 13, 2006. Defendants proceeded to file a Joint Motion to Enforce Settlement and Enter a Final Judgment. Dkt. No. 56. Defendants also filed an interpleader action that same day naming Brown Sims and Plaintiff as Claimants to the settlement proceeds. Dkt. No 57. Attached as Exhibit A to the interpleader action is what purports to be a contract executed by Plaintiff and Brown Sims on January 17, 2006 that appears to grant Brown Sims a security interest in the settlement proceeds from this litigation (as well as several others) as security for the balance of Plaintiff's unpaid invoices. *See id.* Plaintiff disputed the validity of this contract, asserting that the document is a forgery. That same day, Plaintiff filed a motion to deny enforcement of the settlement. Dkt. No. 59. Finally, Brown Sims filed a Motion to Intervene. Dkt. No. 60.

The Court, in a September 26, 2006 Order, ruled that it could not enforce the settlement agreement or otherwise issue a final judgment regarding the suit between the parties. Dkt. No. 88. In considering the various motions mentioned above, the Court explained that, although Plaintiff admittedly agreed to the essential terms of the settlement, he "balked at executing the final closing papers because Defendants included additional terms to which he did not agree." *Id.* In lieu of any record of the oral settlement agreement other than the Court's January 13, 2006 conference memorandum, the Court found it could not enforce the settlement and allowed the case to continue. Because no settlement could be enforced, the Court denied Brown Sims' Motion to Intervene (Dkt. No. 60) as moot and the parties continued to litigate the case

and prepare for trial during the following year. *Id.*

On September 19, 2007—nearly a year later and after several continuances and trial resettings on Plaintiff's behalf[1]—the parties once again informed the Court via telephone that they had agreed to settle their dispute for monetary compensation. Dkt. No. 130. During the telephone conference, the parties agreed to sign and submit the appropriate settlement documents within seven days of the conference. *Id.* Immediately following the parties' announcement that a settlement had been reached, Brown Sims filed its second Motion to Intervene. Dkt. No. 131. Browns Sims' second Motion to Intervene is, for all intents and purposes, identical to its earlier motion. *Compare* Dkt. No. 60 *with* Dkt. No. 131. After the parties' seven day deadline to submit settlement documents had passed, and following numerous attempts to contact the parties to determine the status of the documents, the Court held a status conference on October 24, 2007. During this conference, at which all parties and Brown Sims appeared via telephone, Plaintiff made clear that he would not sign or otherwise consent to the newest settlement agreement, once again alleging that the closing papers included additional terms to which he did not or would not agree. Plaintiff specifically objected to the Defendants' placing the settlement funds into the registry of the Court.

**Analysis**

Brown Sims moves to intervene pursuant to Rule 24(a)(2) of the Federal Rules of Civil Procedure.[2] The Court must therefore determine whether Brown Sims has met the four requirements for intervention as a matter of right. The Fifth Circuit instructs as follows:

> It is well-settled that to intervene of right [under FED. R. CIV. P. 24(a)(2)] each of the four requirements of the rule must be met: (1) the application for intervention must be timely; (2) the applicant must have an interest relating to the property or transaction which is the subject

---

[1] *See* Dkt. No. 114 (granting a continuance based of Plaintiff's health issues); Dkt. No. 122 (allowing a continuance for similar reasons); & Dkt. No. 129 (granting a continuance because Plaintiff recently acquired new counsel).

[2] Brown Sims' Motion to Intervene merely asserts a general request for intervention pursuant to FED. R. CIV. P. 24. *See* Dkt. No. 131. However, Brown Sims' Reply to Plaintiff's Opposition to the Motion to Intervene (Dkt. No. 135) makes clear that the movant prays for intervention pursuant to FED. R. CIV. P. 24(a)(2).

of the action; (3) the applicant [must] be so situated that the disposition of the action may, as a practical matter, impair or impede his ability to protect that interest; (4) the applicant's interest must be inadequately represented by the existing parties to the suit.

*Keith v. St. George Packing Co., Inc.*, 806 F.2d 525, 526 (5th Cir. 1986) (citing *New Orleans Public Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 462 (5th Cir. 1984) (en banc)).

Plaintiff does not contest the timeliness of Brown Sims' Motion to intervene. Indeed, as stated above, Brown Sims has attempted to intervene as promptly as possible upon knowledge of a possible settlement agreement between the parties. Plaintiff also fails to challenge whether Brown Sims' interests are inadequately represented by the existing parties to the suit. However, the Court finds that the existing parties to the suit inadequately represent Brown Sims' interests. A Rule 24(a)(2) movant "has only a minimal burden as to [demonstrating] inadequate representation. All he needs to show is that representation by the existing parties *may* be inadequate." *Heaton v. Monogram Credit Card Bank of Ga.*, 297 F.3rd 416, 425 (5th Cir. 2002) (emphasis added).

Here, the issues are whether Brown Sims has a sufficient "interest relating to the property or transaction which is the subject of the action" and is "so situated that the disposition of the action may, as a practical matter, impair or impede his ability to protect that interest." *See Keith*, 806 F.2d at 526.

To meet these requirements under Rule 24(a)(2) intervention, "a potential intervenor must demonstrate that he has an interest that is related to the property or transaction that forms the basis of the controversy. Not any interest, however, is sufficient; the interest must be 'direct, substantial, [and] legally protectable.' We have explained that 'the interest [must] be one which the substantive law recognizes as belonging to or being owned by the applicant.'" *Saldano v. Roach*, 363 F. 3d 545, 551 (5th Cir. 2004) (quoting *Doe v. Glickman*, 256 F.3d 371, 375 (5th Cir. 2001) and *New Orleans Pub. Serv., Inc*., 732 F.2d at 464) (alteration in original). Thus, "[i]n order to show entitlement to intervention of right . . . [an intervenor] must demonstrate an interest in the subject matter of [the] action *and* that its disposition may realistically impair that interest." *United States v. Tex. E. Transmission Corp.*, 923 F.2d 410, 413 (5th Cir.

1991) (emphasis added).

The Fifth Circuit has held that discharged counsel initially retained on a contingency fee basis can intervene as a matter of right in an action to protect its interests under the contingency fee contract. *See Keith*, 806 F.2d at 526. This rule traces back to *Gaines v. Dixie Carriers, Inc.*, 434 F.2d 52 (5th Cir. 1970). In *Gaines*, the plaintiff signed a contingency fee contract with a law firm to represent him in a personal injury action. *Id.* at 53. After the law firm spent substantial time litigating the case, the plaintiff discharged the firm and opted for new counsel. *Id.* at 54. The discharged firm moved to intervene to protect its interests claimed under the contingency fee agreement. *Id.* The district court denied intervention, but the Fifth Circuit reversed finding "it clear that [the former attorneys] claimed an interest in the subject of the action . . . and is so situated that the final disposition of the action may as a practical matter impair or impede its ability to protect that interest." *Id.*

In *Gilbert v. Johnson*, the Fifth Circuit reaffirmed its *Gaines* decision. *See Gilbert v. Johnson*, 601 F.2d 761, 767 (5th Cir. 1979). The *Gilbert* court found that a doctor's former lawyer had an interest in the doctor's litigation entitling him to intervene under Rule 24(a)(2) where, under state law, the attorney had a lien on his client's cause of action for compensation due for services rendered during that matter. *Id.* In *Gilbert*, the doctor's former attorney sought to intervene because he had a lien based on previous representation of the doctor in the lawsuit. *Id.* The district court denied intervention. *Id.* The Fifth Circuit reversed, reasoning that because it had previously allowed attorney intervention based on a contingency fee arrangement in *Gaines*, and it could not distinguish between the two situations, the district court should have granted the motion to intervene. *Id.* Thus, it seems clear that an attorney who has a contingency fee agreement or who has otherwise established an interest in the case through his or her prior work on the matter may intervene as a matter of right under Rule 24(a)(2).

However, on several occasions the Fifth Circuit has questioned the line of decisions rooted in *Gaines*. *See, e.g., Gilbert*, 601 F.2d at 767-68 (Rubin, J., specially concurring) ("Were the matter open for

consideration, I would deny lawyers employed on a contingent fee the right to intervene in order to safeguard their fees, at least when they can protect their interest in some other way. A lawyer is entitled to protection, but he can usually safeguard the fee he has earned by some means other than intervention. In such cases 'the disposition of the action [will not] as a practical matter impair or impede his ability to protect that interest. . .'") (quoting FED. R. CIV. P. 24). In *Keith v. St. George Packing Co., Inc.*, the Fifth Circuit was confronted with the identical issue it addressed in *Gaines*: whether to allow a discharged attorney initially retained on a contingency fee basis to intervene as a matter of right. *Keith*, 806 F.2d at 526. The *Keith* court reluctantly allowed intervention concluding "[a]lthough *Gaines* may not represent the most persuasive use of FED. R. CIV. P. 24, it binds us as the law of this Circuit until modified en banc." *Id.* Thus, although the rule announced in *Gaines* and *Gilbert*—that an attorney with a contingency fee agreement or who has otherwise sufficiently worked on a matter to establish an interest in a case may intervene as a matter of right under Rule 24—has been called into doubt, it remains the law of the circuit.

Given, however, the Fifth Circuit's reluctance to apply the *Gaines* rule in a contingency fee context—the very situation in which the holding was originally issued—this Court does not see fit to further expand the rule to apply to the situation here.[3] In both *Gaines* and *Gilbert*, the Fifth Circuit allowed intervention because the intervenor initially represented a party and was discharged before the conclusion of the lawsuit. The intervenors in these cases substantially participated in early stages of the litigation in which they sought to intervene. Here, Brown Sims represented Plaintiff in an entirely unrelated matter and its claims of interest are based on a purported lien whose validity is uncertain. Thus, Brown Sims has no "interest relating to the property or transaction" that is the basis of this lawsuit.

---

[3] The Court is also hesitant to allow attorney intervention in this case because the *Gaines* and *Gilbert* opinions offer little reasoning in support of their holdings. Thus, the Court lacks guidance as to what boundaries should be set when allowing attorney intervention. Indeed, the most in-depth discussion on the matter has been that which has focused on the criticism of the *Gaines* doctrine. *See Gilbert*, 601 F.2d at 767-68 (Rubin, J., specially concurring); *Keith*, 806 F.2d at 526; *see also Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 178-79 (2nd Cir. 2001) (discussing the "substantial policy interests" that are implicated by allowing attorneys to intervene in a former client's action as a matter of right ).

Moreover, Brown Sims has not demonstrated that disposition of this case would realistically impair its interests. Brown Sims may file its own lawsuit to collect its purported debt, and nothing decided in this case will operate to estop it from fully pressing its claims. *See James v. Harris County Sheriff's Dep't.*, 2005 WL 1878204 at *2 (S.D. Tex. 2005). To allow Brown Sims to intervene would essentially invite a conjunction of two unassociated lawsuits: the underlying litigation regarding the parties' real estate sales contract and the collateral and unrelated litigation regarding the existence or validity of Brown Sims' lien. Plaintiff's lawsuit arises out of a real estate sales contract allegedly breached in 2002, whereas Brown Sims' concerns arise out of its purported interest in the proceeds from this litigation as security for Plaintiff's unpaid invoices. The two disputes are unconnected and should be dealt with in separate actions.

The Fifth Circuit has made clear that "the applicant's interest relating to the subject of the action must be 'direct and substantial' and must be 'something more than an economic interest.'" *Trans Chem. Ltd. v. China Nat. Mach. Imp. and Exp. Corp.*, 332 F.3d 815, 822 (5th Cir. 2003) (citing *New Orleans Public Serv.*, 732 F.2d at 463). Accordingly, the Court finds that Brown Sims has not carried its burden to show a sufficient interest, or that such an interest, assuming it exists, would be practically impacted by the disposition of this case. Therefore, its Motion to Intervene (Dkt. No. 131) is denied.

It is so ORDERED.

Signed this 12th day of December, 2007.

_____
JOHN D. RAINEY
UNITED STATES DISTRICT JUDGE